**Mary MESSMER, Plaintiff,**

v.

**Kenneth S. APFEL, Defendant.**

No. 99–CV–6222L.

United States District Court,
W.D. New York.

Sept. 8, 2000.

Kenneth R. Hiller, Buffalo, NY, for Mary Messmer, plaintiff.

Brian M. McCarthy, AUSA, U.S. Attorney, Rochester, NY, Anne VanGraafeiland, AUSA, United States Attorney, Rochester, NY, for Kenneth S. Apfel, defendant.

## DECISION AND ORDER

LARIMER, Chief Judge.

### INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("the Commissioner") that plaintiff was not disabled under the Social Security Act ("the Act") and, therefore, was not entitled to disability benefits. Both plaintiff and the Commissioner have moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). For the reasons outlined below, plaintiff's motion is denied, and the Commissioner's motion is granted.

### PROCEDURAL BACKGROUND

Plaintiff, Mary J. Messmer ("Messmer"), applied for Social Security disability benefits on August 9, 1996. (T. 79–82).[1] The Social Security Administration ("SSA") denied her application initially and upon reconsideration. (T. 64, 68). Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held on March 10, 1998. (T. 26–59). On May 22, 1998, the ALJ issued a decision finding that plaintiff was not entitled to disability benefits. (T. 11–20). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on March 31, 1999. (T. 6–7). Plaintiff commenced this

---

1. "T. ___" refers to the page of the transcript of the Administrative Record filed by the Commissioner with his Answer.

action on May 26, 1999, seeking review by this Court of the Commissioner's final decision.

## FACTUAL BACKGROUND

Plaintiff was born on August 22, 1934. (T. 29). She has completed high school and some college, as well as vocational training in real estate. (T. 94). Between April 1978 and March 1992, plaintiff worked as a real estate agent. (T. 94). From March 1992 until July 1996, plaintiff was employed in three different positions at First Federal Savings and Loan ("First Federal"). She worked as a real estate administrator from March 1992 until July 1993, followed by a month from September to October 1993, as a document specialist. (T. 94). It was in this position of document specialist that plaintiff alleges she initially injured her back. (T. 33–34). Her symptoms began on October 15, 1993, after lifting heavy files and bending. (T. 34). Plaintiff stopped working from November 1993 until November of 1995. (T. 33, 154). Plaintiff received disability pay from First Federal beginning in November of 1993, although the record does not indicate how long she received these benefits.[2] (T. 53). She returned to work as a real estate sales manager with First Federal in November 1995 and remained until July 1996. (T. 94). Since July of 1996, plaintiff has not worked and collects workers' compensation benefits. (T. 29).

Plaintiff claims her disability, resulting from the October 1993 injury, began on July 15, 1996. (T. 89). Plaintiff has sought the treatment of several doctors, but they have been unable to find objective medical evidence that explains her complaints of pain. The ALJ found that plaintiff's disability did not prevent her from performing work that does not require repetitive bending or lifting of over ten pounds and that allows for an occasional change of position. Therefore, the ALJ

determined that plaintiff was capable of performing her past relevant work in banking and real estate. (T. 20).

## DISCUSSION

### A. The Standard of Review

■ This Court's function is to determine whether the Commissioner's conclusions are supported by substantial evidence. *See Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir.1984). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

### B. The Standard for Determining Disability

A person is "disabled" under the Act and, therefore, entitled to benefits, when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify for benefits, the disability must be the result of "an anatomical, physiological or psychological abnormality demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Such a disability will be found to exist only if an individual's impairment is "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

---

**2.** In his report, orthopaedic surgeon Dr. William Kamell states that in November of 1993 plaintiff was removed from work by her primary physician, Dr. Pamela Tarkington. (T. 186).

■ The ALJ must proceed through a five-step process to determine whether a claimant is entitled to disability benefits. *See Tejada v. Apfel,* 167 F.3d 770, 774 (2d Cir.1999). At the first step of this inquiry, the ALJ found that since the alleged onset date of plaintiff's disability, she had not engaged in substantial gainful activity. (T. 14). Next, the ALJ found plaintiff to have a "severe impairment" that significantly limits her ability to do basic work activities. (T. 14); *See Tejada,* 167 F.3d at 774. The third inquiry addresses whether, based solely on medical evidence, plaintiff's "severe impairment" is listed in 20 C.F.R. pt. 404, subpt. P, app. 1. *See Tejada,* 167 F.3d at 774. Since plaintiff did not present a listed impairment (T. 18), the ALJ proceeded to the fourth inquiry of "whether, despite the claimant's severe impairment, she has the residual functional capacity ["RFC"] to perform her past work." *Tejada,* 167 F.3d at 774. Plaintiff bears the initial burden of showing that her impairment prevents her from returning to her previous type of employment. *See Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982). The ALJ found that, except for her position as sales manager, plaintiff had the RFC to perform her previous relevant work. (T. 18–19). The ALJ thus ended this inquiry at step four and found that plaintiff was not entitled to disability benefits.

### C. Substantial Evidence for Findings

■ Plaintiff contends that the ALJ's determination is not supported by substantial evidence and has requested that the Court remand this case to the ALJ for further development of the record. A remand is appropriate where there are gaps in the record, or the ALJ has applied an improper legal standard and further development of the evidence is needed. *See Parker v. Harris,* 626 F.2d 225, 235 (2d Cir.1980); *see also Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979); *Cutler v.*

*Weinberger,* 516 F.2d 1282, 1287 (2d Cir. 1975). Plaintiff alleges that the ALJ improperly characterized her past relevant work.

Plaintiff contends that her position as real estate administrator required her to sit for six to seven hours out of an eight-hour workday and, as a real estate broker, she spent three quarters of the workday sitting. Plaintiff suggests that there is insufficient evidence for the ALJ to have found that these jobs allowed her to alternate between sitting and standing as needed.

■ The ALJ relied on the disability report plaintiff filed with the SSA in concluding that plaintiff's previous employment in both banking and real estate would allow for some alternating of positions. (T. 18–19). In fact, plaintiff points to no evidence to suggest that alternating positions would *not* be allowed in any of the employment that the ALJ found suitable.

In her disability report, plaintiff stated that her previous work consisted of one-half hour of walking, one-half hour of standing, and seven hours sitting, during an eight-hour workday. (T. 95). It is reasonable to infer that during this type of workday plaintiff had the discretion to alternate her standing and sitting as necessary; there is no evidence in the record that this was not the case. In fact, plaintiff testified that as a real estate administrator, she sat "seven hours a day, six and a half maybe, because [she] was up and down copying and walking to meetings." (T. 35). This suggests ample opportunity to change positions. The record supports the ALJ's conclusion that plaintiff was allowed to alternate between sitting and standing in her previous employment.

Plaintiff also worked as a document specialist for only one of the sixteen months that she was employed by First Federal.[3] (T. 94). Plaintiff argues that the ALJ

---

**3.** This position is listed as "document specialist" in plaintiff's disability report (T. 94), however, it was referred to as "contract administrator" during the hearing (T. 34).

overlooked the fact that her position as a document specialist required her to carry heavy boxes and stand for extended periods. (T. 186). Plaintiff's orthopaedic surgeon, Dr. William M. Kamell, noted that, as a document specialist, plaintiff was required to lift forty to fifty-pound cartons and stand for seven hours a day. (T. 186). However, in the disability report that she filed with the SSA, plaintiff specified that the heaviest weight she lifted at work was ten pounds and that she only spent one-half hour a day standing. (T. 95).

In addition, plaintiff asserts that the ALJ's decision is insufficient because it lacks specificity. In determining plaintiff's RFC, the ALJ determined that plaintiff cannot lift or carry more than ten pounds frequently, cannot bend repeatedly, and cannot perform work which does not allow her to alternate positions at reasonable intervals. (T. 14). In denying plaintiff's claim, the ALJ found that: "[plaintiff] is capable of performing past relevant work in banking and real estate.... [T]hese jobs, as [plaintiff] described them, would allow for some alternating of position and require little bending." (T. 18–19). Plaintiff argues that the ALJ failed to specify how long a "reasonable interval" is, making it impossible to ascertain if plaintiff's past relevant work is consistent with the RFC determination.

The Second Circuit has held that when the burden is on the plaintiff to prove that she is unable to resume her previous relevant work, an ALJ may base his or her conclusion on the lack of evidence from a physician to support plaintiff's claim that she is not able to perform past work. *See Diaz v. Shalala*, 59 F.3d 307, 315 (2d Cir. 1995); *see also Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir.1983) ("The [ALJ] is entitled to rely not only on what the record says, but also on what it does not say."). Upon careful review of plaintiff's medical records, this Court has failed to

locate, and plaintiff has failed to suggest, any specific medical determination limiting the length of sitting during her employment. (T. 121–210).[4] The ALJ properly concluded that the medical evidence does not support the existence of sitting limitations, except that there need be some alternating of position. (T. 15, 17, 18–19).

### D. *Credibility Determinations and Subjective Complaints*

 Plaintiff suggests that the ALJ improperly discredited her testimony regarding her pain and the resulting limitations. In assessing a disability claim, the ALJ must consider all of claimant's subjective complaints, including pain. *See* 20 C.F.R. § 404.1529(a); *Winkelsas v. Apfel*, 2000 WL 575513, at *2 (W.D.N.Y. Feb.14, 2000). The Act provides that a claimant's testimony concerning pain shall be evaluated by the following standard:

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability ...; there must be medical signs and findings ... which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished ..., would lead to a conclusion that the individual is under a disability.

42 U.S.C. § 423(d)(5)(A). "Thus, while a claimant's allegations of pain are relevant to the ultimate issue of disability, allegations of pain alone do not constitute conclusive evidence of disability." *Winkelsas*, 2000 WL 575513, at *3.

 The ALJ may evaluate the credibility of a claimant together with the medical findings and other evidence in determining the true extent of the disability alleged by the claimant. *See Soto v. Shalala*, 1995

---

4. Plaintiff's RFC assessment report prepared by a non-examining medical consultant notes that plaintiff can sit for a total of about six hours in an eight-hour day, with normal breaks. (T. 102).

WL 362497, at *5 (E.D.N.Y. June 9, 1995) (quoting *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)). After weighing any inconsistencies between the medical evidence and a claimant's subjective complaints, the ALJ may discount the claimant's subjective opinion with respect to the degree of impairment. *See* 20 C.F.R. § 404.1529(c)(4); *Winkelsas,* 2000 WL 575513, at *3; *Smith v. Apfel,* 1999 WL 965646, at *8 (N.D.N.Y. Oct.19, 1999); *Pascariello v. Heckler,* 621 F.Supp. 1032, 1036 (S.D.N.Y.1985). However, if the ALJ decides to "reject subjective testimony concerning pain and other symptoms[, he] 'must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is supported by substantial evidence.'" *Costanzo v. Apfel,* 2000 WL 575660, at *4 (W.D.N.Y. Feb.8, 2000) (quoting *Brandon v. Bowen,* 666 F.Supp. 604, 608 (S.D.N.Y.1987)).

The record supports the ALJ's findings that plaintiff's physicians have consistently "stated that there are no objective findings to which the reported symptoms can be attributed." (T. 17). During one physical exam, Dr. Kamell reported a spasm, tenderness, loss of reflexes, and a herniation in plaintiff's back. (T. 17). However, Dr. Kamell's analysis of plaintiff's MRI showed no evidence of disc herniation or any other abnormalities. (T. 193). In fact, all of the other physicians who examined plaintiff found no objective evidence of abnormality that would account for her subjective complaints. (T. 122, 123, 133, 141, 194, 209–210).

Given the lack of objective medical evidence to substantiate plaintiff's subjective complaints of pain, the ALJ evaluated additional evidence to determine the true extent of plaintiff's disability. The ALJ considered the location and severity of the pain, as well as aggravating factors such as extended sitting and standing. (T. 17). The ALJ noted that despite plaintiff's claim that she can neither sit nor stand more than twenty minutes at a time, she has acknowledged driving her car, playing golf, exercising weekly with a personal trainer, socializing, and going to movies and baseball games. (T. 17). Plaintiff reported traveling in the passenger side of her car from Florida to Rochester, as well as traveling to Bermuda, Toronto, and Europe. (T. 18). The ALJ noted that plaintiff had used only an over-the-counter pain medication (T. 209) and that she used a very small amount of medication to help her sleep (T. 214). Given all the above, the ALJ's determination concerning plaintiff's subjective complaints of pain is supported by the record and comports with the statutory requirements.

## CONCLUSION

Plaintiff's motion for judgment on the pleadings (Dkt.# 6) is denied, and Commissioner's motion for summary judgment on the pleadings (Dkt.# 4) is granted.

IT IS SO ORDERED.