### Jean M. GALLAGHER on Behalf of Eleanor GALLAGHER, Plaintiff-Appellant,

v.

### Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant-Appellee.

### No. 444, Docket 82–6138.

United States Court of Appeals, Second Circuit.

Argued Nov. 10, 1982.

Decided Jan. 3, 1983.

Harvey Burko, Brooklyn, N.Y. (Shirley Raynor, Jacowitz, Thorner, Severance & Burko, Brooklyn, N.Y., on brief), for plaintiff-appellant.

Jan Freedman Constantine, Asst. U.S. Atty., Brooklyn, N.Y. (Raymond J. Dearie, U.S. Atty., Miles M. Tepper, Asst. U.S. Atty., Brooklyn, N.Y., on brief), for defendant-appellee.

Before KAUFMAN, TIMBERS, and NEWMAN, Circuit Judges.

NEWMAN, Circuit Judge:

This appeal from a denial of widow's disability benefits under the social security system concerns the unfortunate plight of a person suffering pain for which even sophisticated diagnostic techniques have not been able to discover a cause. Eleanor Gallagher[1] appeals from an April 22, 1982, judgment of the District Court for the

---

1. The suit was brought on behalf of Mrs. Gallagher by her daughter.

Eastern District of New York (Henry Bramwell, Judge) in favor of defendant Secretary of Health and Human Services in a suit for widow's disability benefits under section 202(e)(1)(B)(ii) and 223(d)(2)(B) of the Social Security Act, 42 U.S.C. §§ 402(e)(1)(B)(ii), 423(d)(2)(B) (1976). We agree with the District Court that the denial of benefits is based on substantial evidence and is consistent with applicable statutes and regulations, and we therefore affirm the judgment.

Mrs. Gallagher's husband, whose earnings record is the basis for her claim, died in 1970. Beginning in 1976, when she was 55 years of age, she began to experience pain from the top of her head, down the right side of her face, and into her chin. The frequency, duration, and intensity of the pain has increased to the point where she alleges that she is unable to engage in any gainful activity. Pain-killing medications have been prescribed, usually to no avail. Mrs. Gallagher has consulted several physicians who have tried, without success, to determine the nature of the impairment that is causing her pain. Among the diagnostic techniques that have been used are skull x-rays, sinus x-rays, computerized tomography scan of her head, clinical neurological testing, and dental examination. A dentist extracted all of her upper teeth, but the pain persisted and even worsened. Her doctors have all expressed the opinion that she is suffering from intense pain. The pain has interfered with her sleeping, and she has suffered a significant weight loss since the pain began. One of her doctors noted a diminished sensation to pinpricks on the right side of her face. Based on these circumstances an administrative law judge determined that Mrs. Gallagher had not sustained her burden of establishing that she is disabled within the meaning of the Social Security Act.

Section 202(e)(1)(B)(ii) of the Act provides that the widow of an insured individual is entitled to an insurance benefit if she is between 50 and 60 years of age and suffering a disability as defined in section 223(d). That section generally defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment," but specifically provides that a widow shall not be determined to be under a disability "unless his or her physical or mental impairment or impairments are of a level of severity which under regulations prescribed by the Secretary is deemed to be sufficient to preclude an individual from engaging in any gainful activity." Section 223(d)(3) defines "physical or mental impairment" for all disability claimants as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

The Secretary has implemented these statutory provisions with regulations that authorize a finding of disability if a person has an impairment that is included in a detailed listing of impairments, 20 C.F.R. Subpart P, Appendix 1 (1982), or is the equivalent of one of the listed impairments. 20 C.F.R. § 404.1520(d) (general disability claimants), 20 C.F.R. § 404.1578(a)(1) (widow's disability claimants). The regulations also provide that equivalence with a listed impairment will be determined if a claimant's "medical findings are at least equal in severity and duration to the listed findings" for a listed impairment. 20 C.F.R. § 404.-1526(a). "Medical findings" are defined as "symptoms," "signs," or "laboratory findings," each of which is defined. 20 C.F.R. § 404.1528. The regulations take particular note of the manner in which symptoms, including pain will be evaluated:

> The effects of all symptoms, including severe and prolonged pain, must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptom. We will never find that you are disabled based on your symptoms, including pain, unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce those symptoms.

20 C.F.R. § 404.1529.

Applying these statutory and regulatory provisions, the Administrative Law Judge

acknowledged the presence of severe pain as reported by the claimant and apparently accepted by her doctors, but was unpersuaded as to the existence of a disability within the meaning of the Act because her doctors "have failed to definitively demonstrate the existence, severity, or etiology of any condition producing the subjective symptomatology" despite their use of "every appropriate medically acceptable diagnostic technique." The ALJ also acknowledged that findings " 'consistent with' her complaints, such as diminished sensation (to pinpricks) on the right side of her face, were even noted," but emphasized that "no specific documented clinical or laboratory findings of the types as set forth in any section of the 'Listing of Impairments' in [Appendix 1] have been adduced." The ALJ thus concluded that Mrs. Gallagher had not proved a statutorily defined disability, *i.e.*, an "impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Act § 223(d)(3), 42 U.S.C. § 423(d)(3).

On appeal, the claimant contends that this conclusion is in conflict with our prior decisions in *Aubeuf v. Schweiker,* 649 F.2d 107 (2d Cir.1981), and *Marcus v. Califano,* 615 F.2d 23 (2d Cir.1979). Specifically relied upon is the observation in *Marcus* that "subjective *pain* may serve as the basis for establishing disability, even if such pain is unaccompanied by positive clinical findings or other 'objective' medical evidence." 615 F.2d at 27 (emphasis in original). However,

that statement and similar language in *Aubeuf,* 649 F.2d at 112–13, were expressed in cases where the claimant had been determined to be suffering from an impairment whose existence was established by medical findings.[2] In *Marcus* the claimant suffered from osteoporosis. 615 F.2d at 28. In *Aubeuf* the diagnosis was spondylitis of the Marie-Strumpell type. 649 F.2d at 111. These cases did not signal any departure from the statutory requirement that a disability claimant must prove physical or mental impairment resulting from abnormalities demonstrable by "medically acceptable clinical and laboratory techniques." What these cases properly recognized is that once such an impairment has been diagnosed, pain caused by the impairment may be found to be disabling even though the impairment "ordinarily does not cause severe, disabling pain." *Marcus, supra,* 615 F.2d at 28. The pain need not be corroborated by objective medical findings, but some impairment must be medically ascertained, as it was not only in *Marcus* and *Aubeuf,* but also in *Hankerson v. Harris,* 636 F.2d 893 (2d Cir.1980) (heart disease); *McLaughlin v. Secretary of Health, Education and Welfare,* 612 F.2d 701 (2d Cir.1980) (discogenic problem); and *Ber v. Celebrezze,* 332 F.2d 293 (2d Cir.1964) (arthritis of cervical spine).

The statutory definition of a disability represents a Congressional decision to provide benefits to those eligible persons whose impairment has a medically ascertainable source.[3] That does not necessarily require

---

2. It should also be noted that the claimants in *Aubeuf* and *Marcus* were seeking wage earner's disability benefits, whereas Mrs. Gallagher seeks widow's disability benefits. However, the statutory distinctions between these categories of claimants are not directly relevant to the issue on this appeal. The Act provides that a widow's disability must be sufficiently severe to preclude an individual from engaging in "any" gainful activity, whereas a wage earner's disability need be sufficient to preclude an individual from engaging in any "substantial" gainful activity. Act, § 223(d)(2)(A) and (B), 42 U.S.C. § 423(d)(2)(A) and (B). In addition, the Act explicitly provides that the determination of whether a widow's disability reaches the requisite level of severity is to be made "under

regulations prescribed by the Secretary." Act, § 223(d)(2)(B), 42 U.S.C. § 423(d)(2)(B). Since the ALJ concluded that a disability has not been established, issues concerning extent of severity and feasible activity were properly not reached. *See* 20 C.F.R. § 404.1520(a).

3. Congress added section 223(d)(3) to the definition of "disability" in 1967, Pub.L. No. 90–248, § 158(b), 81 Stat. 821, 868, "to reemphasize the predominant importance of medical factors in the disability determination." H.Rep. No. 544, 90th Cong., 1st Sess. 30 (1967); S.Rep. No. 744, 90th Cong., 1st Sess. 48 (1967), *reprinted in* 1967 U.S.Code Cong. & Ad.News 2834, 2882.

determination of the complete etiology of the impairment, but it does mean, as the Act says, that the impairment must be attributable to abnormalities demonstrable by medically acceptable techniques. In drawing the line at this point, Congress authorized the Secretary to deny benefits to claimants like Mrs. Gallagher, who, though suffering from severe pain, has not produced any medical evidence identifying an underlying impairment. Manifestly the Act ties the scope of its benefits to the progress of medical science, permitting a denial of benefits in those instances when the cause of subjective symptoms defies diagnosis. Congress was entitled to conclude that in the allocation of trust funds medical ascertainment of the existence of an abnormality was an appropriate safeguard against the risk of payment for exaggerated claims of subjective pain, even though such a requirement permits denial of payment to some undiagnosed claimants who may truly be in distress. The distribution of public funds not infrequently requires such difficult legislative judgments to be made, and courts are obliged to enforce them.

The judgment of the District Court is affirmed.